IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MANUSH HOVHANNISYAN,**

Plaintiff,

v.

**WINCO HOLDINGS, INC.; WINCO FOODS, LLC**,

Defendants.

Case No. 3:18-cv-01900-MO

OPINION AND ORDER

**MOSMAN, J.**,

This case comes before me on Defendants' ("WinCo") Motion for Summary Judgment [ECF 27]. For the reasons stated below, I GRANT WinCo's motion and DISMISS this case with prejudice.

### BACKGROUND

Plaintiff Manush Hovhannisyan was hired in 2003 to work as a deli clerk at a WinCo grocery store in Tigard, Oregon. Tripp Decl. Ex. 2 [ECF 28-2] ("Pl.'s Dep.") at 3-4, 8.[1] Ms. Hovhannisyan suffered a childhood injury that resulted in her left arm being fused to her shoulder blade, which limited its strength and range of movement and made her mostly reliant on her right arm. *Id.* at 103-04.

---

[1]     For this source, I cite to the exhibit page numbers, not the deposition page numbers.

In June 2016, Ms. Hovhannisyan reported to her supervisors that she had reaggravated a strain-related injury to her right shoulder and arm, purportedly due to the repetitive lifting required by her deli clerk duties. *Id.* at 27. She was advised to see her physician, who released her back to work with restrictions limiting the use of her right arm and restricting the amount of weight she could lift. *Id.* at 38.  Ms. Hovhannisyan filed a worker's compensation claim for this injury; the claim was accepted and she received benefits. *Id.* at 27-28, 137. To accommodate her restrictions, WinCo placed her in a temporary light duty position performing "go-backs" (i.e., restocking misplaced items onto shelves). Tripp Decl. Ex. 3 [28-3] at 2.

In February 2017, Ms. Hovhannisyan underwent surgery on her right shoulder. Pl.'s Dep. [28-2] at 46. After a period of medical leave, in May 2017 her physician released her to work with restrictions of no lifting over five pounds and no repetitive reaching, pushing, or pulling. *Id.* at 48-49; Tripp Decl. Ex. 5 [28-5] at 9. To accommodate those positions, WinCo allowed Ms. Hovhannisyan to perform temporary light duty work as a "greeter" at the front of the store. Pl.'s Dep. [28-2] at 49-50. On June 12, 2017, Ms. Hovhannisyan returned to performing temporary light duty "go-backs" work. *Id.* at 52.

Unfortunately, Ms. Hovhannisyan's surgery was unsuccessful and her injury worsened. *Id.* at 55-57. By September 2017, she was experiencing significant pain when reaching with her arm, such that it prevented her from performing "facing" duties (i.e., re-positioning items on shelf fronts) as part of her go-backs work. *Id.* As a result, WinCo eliminated facing duties from her responsibilities. *Id.* at 57. From then on, Ms. Hovhannisyan remained in her temporary light duty position, performing go-backs without facing, as well as other assorted tasks within her restrictions. *Id.* at 60.

On April 27, 2018, WinCo store management received a report from an employee describing that Ms. Hovhannisyan appeared to be spending an inordinate amount of time in the break room. Tripp Decl. Ex. 9 [28-9] ("Harris Dep.") at 3. WinCo investigated by reviewing security camera footage of the break room and determined that Ms. Hovhannisyan had taken 17 hours of extra breaks, while on the clock, over a three-week period. Tripp Decl. Ex. 11 [28-11] ("Williams Dep.") at 3-6; Tripp Decl. Ex. 13 [29-2] at 5. Ms. Hovhannisyan had not asked permission to take these extra breaks or informed anyone at WinCo that she was doing so. Pl.'s Dep. [28-2] at 45, 70-73. During the time when she was taking these breaks, Ms. Hovhannisyan had clocked herself in as "working" and was thus receiving compensation for this time. *Id.* at 98-99; Tripp Decl. Ex. 12 [28-12].

On May 1, 2018, WinCo management personnel interviewed Ms. Hovhannisyan in connection with their investigation. Williams Dep. [28-11] at 9-10. Ms. Hovhannisyan explained that she took the extra breaks when she was in pain due to her injury and that she thought she was permitted to do so as part of her light duty position. Pl.'s Dep. [28-2] at 63-69.

WinCo placed Ms. Hovhannisyan on suspension and submitted the results of its investigation to its Human Resources department. Tripp Decl. Ex. 4 [28-4] ("Soares Dep.") at 8-9, 14-15. Human Resources was informed that Ms. Hovhannisyan had been working on light duty due to a workplace injury, that she had believed that she was allowed to take these extra breaks because of her injury, but that she had not informed management of her need to take extra breaks or that she intended to do so prior to her interview on May 1st. Tripp Decl. Ex. 15 [29-3] at 1-4. Human Resources reviewed the investigation, including Ms. Hovhannisyan's claimed connection between her need for extra breaks and her workplace injury. Tripp Decl. Ex. 18 [28-18] ("Yanz Dep.") at 4-7. After confirming that Ms. Hovhannisyan's files did not mention a need

for extra breaks and that she had not alerted anyone at WinCo that she needed to take extra

breaks due to her injury prior to her May 1 interview, Human Resources recommended that she

be fired for misappropriation of company time. Tripp Decl. Ex. 13 [29-2] at 1. WinCo

management agreed with the recommendation and fired Ms. Hovhannisyan on May 5, 2018.

Soares Dep. [28-4] at 19.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party

seeking summary judgment bears the burden of establishing the absence of a genuine issue of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment thus

should be entered against "a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Celotex*, 477 U.S. at 322. To determine whether summary judgment is

proper, the court must view the evidence in the light most favorable to the nonmoving party. *Bell*

*v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1281-82 (9th Cir. 1982).

## DISCUSSION

In her complaint, Ms. Hovhannisyan asserts several claims:

I.   Disability discrimination / failure to accommodate under the Americans with Disabilities Act ("ADA") and ORS 659A.112;

II.  Disability retaliation (ORS 659A.109) and worker's compensation retaliation (ORS 659.040);

III. Failure to reinstate (ORS 659A.043) and failure to reemploy (ORS 659A.046).

Compl. [ECF 1] at 5-9.

WinCo moves for summary judgment on all claims. I take each claim in turn.

I.       **Plaintiff's Disability Discrimination and Failure to Accommodate Claims.**

To establish a prima facie case of disability discrimination under the ADA and Oregon

law, a plaintiff must establish that she: (1) has a disability, (2) was a qualified individual, and (3)

suffered an adverse employment action because of the disability. *Snead v. Metro. Prop. & Cas.*

*Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001). If the plaintiff establishes a prima facie case of

discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory

reason for the challenged adverse employment action. *Id.* at 1090-94. Once the defendant

articulates a legitimate, nondiscriminatory reason for the adverse employment action, the burden

shifts back to the plaintiff to establish that the defendant's explanation was pretext for

discrimination. *Id.*

The failure to provide a reasonable accommodation to a qualified individual with a

disability can constitute discrimination under the ADA. 42 U.S.C. § 12112(b)(5)(A); *Kaplan v.*

*City of N. Las Vegas*, 323 F.3d 1226, 1232 (9th Cir. 2003). Once an employee requests an

accommodation, "the employer must engage in an interactive process with the employee to

determine the appropriate reasonable accommodation." *EEOC v. UPS Supply Chain Solutions*,

620 F.3d 1103, 1110 (9th Cir. 2010) (quotation and citation omitted).

There is no dispute that Ms. Hovhannisyan suffered from a disability. But there is a

dispute about whether Ms. Hovhannisyan was a qualified individual and whether she was fired

*because* of her disability. Because I find the latter issue dispositive, I do not address whether Ms.

Hovhannisyan was a qualified individual.

**A. Whether Ms. Hovhannisyan was fired because of her disability.**

Ms. Hovhannisyan argues that she was fired because she took extra breaks, that she took

extra breaks because of her disability, and therefore she was fired because of her disability. *See*

Resp. [39] at 14-16, 24-27. She argues that even if taking the extra breaks constituted misconduct, "an employer [must] excuse past behavior that is the direct result of a known disability." *Id.* at 24-25 (citing *Humphrey v. Memorial Hosps. Ass'n*, 239 F.3d 1128, 1139-40 (9th Cir. 2001)). Rather than fire her, she claims that WinCo should have excused her misconduct and engaged in the interactive process to identify a reasonable accommodation. *Id.* at 27-28.

Assuming *arguendo* that Ms. Hovhannisyan is a qualified individual, I find that she has established a *prima facie* case of disability discrimination.

In response, WinCo first argues that it did not fire Ms. Hovhannisyan because she took extra breaks, it fired her because she misappropriated time—i.e., she "failed to clock out for unauthorized breaks and recorded her time in a way that made it look like she was working when she was not." Reply [43] at 14. WinCo states that it would have permitted her to take extra, off-the-clock breaks had she properly requested them. Soares Decl. [32] ¶ 10.  Further, it argues that there is no causal connection between her misappropriation of time and her disability because her medical condition did not make it difficult for her to accurately record time. Reply [43] at 14.

Second, WinCo also argues that, assuming *arguendo* that there was a causal connection between Ms. Hovhannisyan's misconduct and her disability, WinCo would not be required to excuse her misconduct or provide a reasonable accommodation because she did not claim that that there was a connection until *after* the misconduct occurred. *Id.* at 15-16.

I address each of WinCo's arguments in turn.

As to WinCo's first argument, WinCo's personnel policy states that: "Misappropriation of Company time and/or **claiming time worked when not actually performing Company work** (i.e., taking lunch on the clock, **excessive breaks**, being unproductive for extended periods

of time, etc.) is considered theft of time. Violation of this policy will be considered gross

misconduct." Tripp Decl. Ex. 1 [28-1] at 6-7 (emphasis added). Ms. Hovhannisyan has not

argued that her disability prevented her from seeking permission to take extra breaks or

interfered with her ability to accurately record her time.[2] Accordingly, WinCo's explanation that

it fired Ms. Hovhannisyan not for taking extra breaks but for misappropriating time (by

impermissibly claiming the extra breaks as "work time") constitutes a legitimate,

nondiscriminatory explanation for the challenged adverse employment action. As such, the

burden shifts back to Ms. Hovhannisyan to establish that that explanation is pretext for a

discriminatory motive—a burden that she fails to meet.

It is notable that in all of Ms. Hovhannisyan's briefing, the word "pretext" is nowhere to

be found. To the extent she makes an argument about pretext, it appears to be blended with her

causation argument. For example, Ms. Hovhannisyan states: "Plaintiff has both indirect evidence

and direct evidence of causation sufficient to overcome any nondiscriminatory rationale

advanced by Defendants." Resp. [39] at 16. As indirect evidence, Plaintiff cites the fact that she

"was fired just four days after . . . she reported to management the link between her use of break

time and her workplace injury." *Id*. As direct evidence, she cites that the WinCo decisionmakers

---

[2]    Instead, Ms. Hovhannisyan argues that she reasonably believed that her light duty work
enabled her to take extra breaks as needed, and that she also believed that it was WinCo's policy
to *not* clock out when taking breaks other than lunch breaks. Response [39] at 24. In other words,
she believed she could take paid breaks whenever she needed to, presumably for as long as she
needed to, without informing her supervisors. While it is true that WinCo instructs employees to
not clock out for their regularly allotted rest breaks, Tripp Decl. Ex. 1 [28-1] at 7, there is no
evidence that suggests WinCo's temporary light duty program enables employees to take an
indefinite amount of extra paid breaks at their own discretion. Moreover, Ms. Hovhannisyan
provides no authority for why her mistaken beliefs about WinCo's policies are pertinent here,
even assuming they were reasonable mistakes.

who terminated her exchanged "emails [that] were rife with discussion indicating they knew Plaintiff's use of break time was directly related to her injury claim." *Id*.

As will be discussed in just a moment, it was entirely permissible for WinCo to fire Ms. Hovhannisyan despite learning that she claimed a connection between taking extra breaks and her disability. Moreover, the knowledge of that claimed connection and the proximity in time between gaining that knowledge and making the decision to terminate Ms. Hovhannisyan's employment do not demonstrate pretext. To the contrary, the emails that Ms. Hovhannisyan refers to, even in the light most favorable to her, show that WinCo took extra time to evaluate that purported connection before proceeding with the decision to terminate her employment. For example, as described by Ms. Hovhannisyan: "On May 2, 2018, Yanz emailed Hamilton stating: 'This is a tough one. On one hand based on unproductive time, this would appear as an immediate separation. However, on the other hand, it appears to be directly tied to a worker's compensation claim/condition.'" Resp. [39] at 10 (emphasis omitted) (citation omitted). To any reasonable juror, this email is evidence that *but for* Ms. Hovhannisyan's disability, she would have been fired immediately; it demonstrates the opposite of pretext.

WinCo's second argument, assuming *arguendo* a causal connection between Ms. Hovhannisyan's misconduct and her disability, is also persuasive. According to Equal Employment Opportunity Commission ("EEOC") Guidance:

> 36. Must an employer provide a reasonable accommodation for an employee with a disability who violated a conduct rule that is job-related for the position in question and consistent with business necessity?

> An employer must make reasonable accommodation to enable an otherwise qualified employee with a disability to meet such a conduct standard in the future, barring undue hardship, **except where the punishment for the violation is termination**. Since reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability.

8  –  OPINION AND ORDER

EEOC Guidance, 2002 WL 31994335, at *25 (emphasis added); *see also Alamillo v. BNSF Ry. Co.*, 869 F.3d 916, 922 (9th Cir. 2017) (citing this same EEOC Guidance to hold that an "employer is not required to excuse past misconduct even if it is the result of the individual's disability").

Here, there is no dispute that Ms. Hovhannisyan did not inform WinCo that she was taking breaks due to her disability until after the investigation into her misconduct began. Thus, even taking for granted Ms. Hovhannisyan's framing of events, it seems clear that WinCo—upon learning of her misconduct—was not required to provide her with any additional accommodation and was permitted to terminate her employment.

It might be a different matter if (1) Ms. Hovhannisyan had previously informed WinCo of her need to take extra breaks due to her disability, (2) WinCo refused to accommodate her ability to meet that conduct standard, and then (3) fired her when she subsequently took an extra break. But that is not what happened here.

I find both of WinCo's arguments here to be persuasive and either one would be sufficient to prove that Ms. Hovhannisyan cannot satisfy the third element of her disability claim: that there is a causal connection between her firing and her disability. Therefore, I GRANT summary judgment with respect to Ms. Hovhannisyan's disability discrimination and failure to accommodate claims under the ADA and Oregon law.

## II.    Plaintiff's Retaliation Claims.

Plaintiff asserts disability retaliation claims under the ADA and ORS 659A.109 and workers' compensation retaliation under ORS 659A.040 (collectively, "retaliation claims"). Compl. [1] at 6, 8.

Ms. Hovhannisyan's retaliation claims require proving a causal connection between a protected activity (e.g., filing a worker's compensation claim, seeking a disability accommodation) and an adverse employment event (e.g., getting fired). *See Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269 (9th Cir. 2009) (describing the elements of a disability retaliation claim under the ADA); *Arnold v. Pfizer, Inc.*, 970 F. Supp. 2d 1106, 1140 (D. Or. 2013) (describing the elements of a disability retaliation claim under ORS 659A.109); *Kirkwood v. W. Hyway Oil Co.*, 129 P.3d 726, 729 (Or. App. 2006) (describing the elements of a worker's compensation retaliation claim under ORS 659A.040).

For the same reasons described above with respect to her disability discrimination claims, Ms. Hovhannisyan cannot prove a causal connection between her invocation of the worker's compensation system, or her request for a disability accommodation, and WinCo's decision to terminate her employment. I therefore GRANT summary judgment in favor of WinCo on these claims as well.

### III.   Plaintiff's Claims of Failure to Reinstate/Reemploy

Finally, Ms. Hovhannisyan also brings claims under ORS 659A.043 and 659A.046 for failure to reinstate and failure to reemploy (worker's compensation). Compl. [1] at 7.

Both ORS 659A.043 and 659A.046 generally require an employer to return a worker who has suffered a workplace injury to their former position, or another suitable position, after they have recovered. *See* ORS 659A.043; ORS 659A.046.

Winco argues that "[a]n injured worker loses the rights to both reinstatement and reemployment if the worker is 'discharged for bona[]fide reasons not connected with the injury and for which others are or would be discharged.'" Mot. Summ. J. [27] at 36 (citing OAR 839-006-0136(7); *accord* OAR 839-006-0131(1)(g)).

Ms. Hovhannisyan argues that the language in the above-quoted regulation " . . . bona fide reasons **not connected with the injury** . . ." means that she could not be fired for her misconduct because the misconduct was caused by her disability. Resp. [39] at 20.

This is a repeat of the same argument that I rejected above and I see no reason why the analysis should be different here. I therefore GRANT summary judgment in favor of WinCo on these claims.

## CONCLUSION

For the foregoing reasons, I GRANT WinCo's Motion for Summary Judgment [27] and DISMISS this case with prejudice. All pending motions are DENIED as moot.

IT IS SO ORDERED.

DATED this __27__ day of April, 2020.


_Michael W. Mosman_____
MICHAEL W. MOSMAN
United States District Judge

11 –   OPINION AND ORDER